**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, § § § § Plaintiff, § § v. § § HOLLINGSWORTH RICHARDS, LLC, d/b/a § HONDA OF COVINGTON § Defendant. § § § § | CIVIL ACTION NO. JURY DEMAND |

**COMPLAINT**

**NATURE OF THE ACTION**

This is an action under Title I of the Americans with Disabilities Act of 1990 ("ADA") and Title I of the Civil Rights Act of 1991, as amended, to correct unlawful employment practices on the basis of disability and to provide appropriate relief to Brandi Bourgeois. As alleged with greater particularity below, the Defendant, Hollingsworth Richards, LLC, d/b/a Honda of Covington ("Defendant" or "Honda of Covington"), subjected Ms. Bourgeois to unlawful medical examinations and terminated her because of disability or because it regarded her as having a disability.

**JURISDICTION AND VENUE**

1.  Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 451, § 1331, § 1337, § 1343, and § 1345. This action is authorized and instituted pursuant to the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C.§ 2000e-5(f)(1) and (3) and the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

1

2. The employment practices alleged to be unlawful were committed in the State of Louisiana and, therefore, within the jurisdiction and venue of the United States District Court for the Eastern District of Louisiana pursuant to Title VII, 42 U.S.C.§ 2000e-5(f)(3).

## PARTIES

3. Plaintiff, the U.S. Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title I of the ADA and is expressly authorized to bring this action by the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Title VII, 42 U.S.C. § 2000e-5(f)(1).

4. Defendant is a Louisiana limited liability company doing business at all relevant times in the State of Louisiana.

5. At all relevant times, Defendant has been a covered entity under the ADA, 42 U.S.C. § 12111(2).

6. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce with at least fifteen employees under the ADA, 42 U.S.C.§ 12111(5) and (7).

## ADMINISTRATIVE PROCEDURES

7. More than 30 days prior to the institution of this action, Brandi Bourgeois filed a charge of discrimination with the Commission alleging violations of the ADA by Defendant.

8. On or about June 3, 2019, the Commission issued Defendant a Letter of Determination finding reasonable cause to believe that Defendant violated the ADA and inviting it to join the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

9. Thereafter, the Commission engaged in communications with Defendant to provide it the opportunity to remedy the discriminatory practices described in the Letter of Determination.

10. On or about August 20, 2019, the Commission issued Defendant a Notice of Conciliation Failure advising it that the Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

11. All conditions precedent to the institution of this action have been fulfilled.

## STATEMENT OF CLAIMS

12. Since at least October 2016, Defendant has engaged in unlawful employment practices in violation of the ADA, 42 U.S.C. § 12112(a) and (b).

13. Ms. Bourgeois is a qualified individual with a disability under the ADA, 42 U.S.C. § 12102 and § 12111(8).

   a. Ms. Bourgeois has an actual impairment, Attention Deficit Hyperactivity Disorder ("ADHD"), that substantially limits her is the major life activities of thinking and concentrating.

   b. Defendant regarded Ms. Bourgeois as disabled by discharging her because of her impairment, ADHD.

14. Defendant terminated Ms. Bourgeois because of her actual or perceived disability.

   a. On or about August 4, 2016, Defendant hired Ms. Bourgeois as a Sales Consultant.

   b. On the date of her hiring, Ms. Bourgeois disclosed to Defendant on a hiring form that she had ADHD, that she was under the care of a treating physician, and that she was taking prescription Adderall to treat the condition.

c. Upon her hiring in August 2016, Defendant had Ms. Bourgeois undergo a routine, post-offer drug test as a condition of employment.

d. The August 2016 drug test produced an initial, presumptive positive finding of amphetamines. This initial finding was sent to a medical review officer for further review and confirmation. Upon verifying Ms. Bourgeois' prescription, the medical review officer issued a final "negative result" of Charging Party's August 2016 drug test.

e. Defendant received the medical review officer's negative result, and Ms. Bourgeois began working for Defendant.

f. On or about September 29, 2016, Ms. Bourgeois' husband suffered a serious motorcycle accident that required his hospitalization.

g. On or about October 8, 2016, Operations Manager, Jason Wilson told Ms. Bourgeois that she looked very "emotional" and told her to stop taking her medication.

h. Understanding from these statements that Mr. Wilson disapproved of her medication and fearing the loss of her job if she failed to comply, Ms. Bourgeois decided not to take her medication on days she was scheduled to work a full day.

i. As Ms. Bourgeois was scheduled to work a full day on October 11, 2016, she did not take her medication before going to work.

j. In the course of that day, Mr. Wilson pulled Ms. Bourgeois aside and told her she was "was acting weird, off, and unfocused." He asked her whether she had taken any medication that day. Ms. Bourgeois answered that she had not and explained that her behavior and lack of focus was due precisely to the fact that she had not taken her medication. Mr. Wilson then ordered Ms. Bourgeois to take a drug test for illegal drug use.

He told Ms. Bourgeois she could not return to work until Defendant received the test results.

k. That same day, Ms. Bourgeois took the drug test that Mr. Wilson had ordered at Kwik Clinic and Occupational Health, the clinic where she had taken the August 2016 drug test for Defendant. While still at the clinic, Ms. Bourgeois learned the initial drug screen showed a "presumptive positive" finding of amphetamines in her system. A clinician told her a medical review officer would contact her to compare the drug test findings against her prescription medications and would issue a final test result.

l. Also, on October 11, 2016, the clinic provided Defendant a copy of the Initial Drug Screen Result Form on which it was noted in large lettering marked by asterisks, "*Sent to Lab for Confirmation*."

m. Around mid-day on October 14, 2016, the medical review officer contacted Ms. Bourgeois via telephone requesting proof of her prescription. Ms. Bourgeois immediately provided him the information.

n. Shortly thereafter, on that same day, Mr. Wilson contacted Ms. Bourgeois via telephone to inform her that she was discharged for having a positive drug test result. Ms. Bourgeois told Mr. Wilson that he was mistaken, that she had ADHD, and that the positive finding was the result of her medication. Ms. Bourgeois also told Mr. Wilson that she had just spoken to the medical review officer and provided him the prescription information necessary to clear her to return to work. Mr. Wilson replied that the decision had already been made. She asked him how he would explain her termination when the medical review officer would be issuing a final test result showing there were no prohibited

5

substances in her system, Mr. Wilson stated, "I don't think that's going to happen. We'll cross that bridge if we get there."

      o.    That very day, October 14, 2016, Respondent received the medical review officer's "Negative Result" of Ms. Bourgeois' drug test.

      p.    Also, on October 14, 2016, following the termination, Mr. Wilson completed an internal Termination Form for Ms. Bourgeois. On the form, he explained her discharge, noting: "Employee appeared impaired 10/11. Sent for drug test. Results not resolved by 10/14." Describing what was said during the termination meeting, he wrote: "Employee was terminated due to appearance at work and result from drug screen."

      q.    Mr. Wilson did not tell Ms. Bourgeois at any time that she was being terminated for poor performance.

15.    The effect of Defendant's unlawful employment practices complained of above has been to deprive Ms. Bourgeois of equal employment opportunities and otherwise adversely affect her status as an employee because of disability in violation of the ADA.

16.    Defendant subjected Ms. Bourgeois to unlawful medical inquiries in violation of the ADA, when, on October 8, 2016, Mr. Wilson ordered Ms. Bourgeois to stop taking medication prescribed by her doctor for a known disability, and when, on October 11, 2016, Mr. Wilson asked Ms. Bourgeois whether she had taken any medication that day.

17.    Defendant subjected Ms. Bourgeois to an unlawful medical examination in violation of the ADA when, on October 11, 2016, Mr. Wilson ordered Ms. Bourgeois to take a drug test.

18.    The unlawful employment practices complained of above were intentional.

19.     Defendant acted with malice and/or reckless indifference to the federally protected rights of Ms. Bourgeois when it engaged in the unlawful employment practices complained of above.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A.  Grant a permanent injunction enjoining Defendant its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from discriminating against employees on the basis of disability by: discharging persons because of disability or because it perceives persons as disabled, making illegal medical inquiries and examinations of its employees, and ordering employees not to take medication prescribed by their physician.

B.  Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for qualified individuals with disabilities and which eradicate the effects of its past and present unlawful employment practices.

C.  Order Defendant to make Ms. Bourgeois whole by providing appropriate backpay with prejudgment interest, front pay, other economic damages in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to reinstatement and/or front pay.

D.  Order Defendant to post and keep posted the notices required by the ADA, 42 U.S.C. § 12115, which incorporates by reference Title VII, 42 U.S.C. § 2000e-10(a).

E.  Order Defendant to make and preserve all records relevant to the determination of whether unlawful employment practices have been or are being committed, in

accordance with the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Title VII, 42 U.S.C. § 2000e-8(c).

F. Order Defendant to make Ms. Bourgeois whole by providing her compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, including but not limited to job-search and medical expenses, in amounts to be determined at trial.

G. Order Defendant to make Ms. Bourgeois whole by providing her compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of above, including emotional pain and suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

H. Order Defendant to pay punitive damages for its malicious and/or reckless conduct described above, in amounts to be determined at trial.

I. Grant such further relief as the Court deems necessary and proper in the public interest.

J. Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by this Complaint that are triable to a jury.

Respectfully submitted,

**Sharon Fast Gustafson**
General Counsel
U.S. Equal Employment Opportunity Commission
No Bar No. Assigned

**Robert A. Canino**
Acting Deputy General Counsel
U.S. Equal Employment Opportunity Commission
No Bar No. Assigned

**Gwendolyn Young Reams**
Associate General Counsel
U.S. Equal Employment Opportunity Commission
No Bar No. Assigned

**Rudy L. Sustaita**
Regional Attorney
U.S. Equal Employment Opportunity Commission
Houston District Office
1919 Smith Street, 6th Floor
Houston, TX 77002
Phone: (346) 327-7691
Fax: (713) 651-4995
rudy.sustaita@eeoc.gov
Texas Bar No. 19523560

**Gregory T. Juge**
Supervisory Trial Attorney
U.S. Equal Employment Opportunity Commission
New Orleans Field Office
Hale Boggs Federal Building
500 Poydras Street, Suite 809
New Orleans, LA 70130
Phone: (504) 676-8239
Fax: (504) 595-2886
gregory.juge@eeoc.gov
Louisiana Bar No. 20890

**/s/ Claudia Molina-Antanaitis**
**Claudia Molina-Antanaitis (Lead)**
Trial Attorney
U.S. Equal Employment Opportunity Commission
1919 Smith Street, 6th Floor
Houston, Texas 77002
Phone: (346) 327-7711
Fax: (713) 651-7995
claudia.molina@eeoc.gov
Maryland Bar No. 0212180252

**COUNSEL FOR U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**REGISTERED AGENT FOR SERVICE OF PROCESS:**
Brett P. Furr, Taylor Porter Brooks & Phillips, LLP
450 Laurel Street, 8th Floor
Baton Rouge, Louisiana, 70801